RAY R. AND MARY G. CONNERS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 41651-85.      Filed March 5, 1987.

*Arthur A. Armstrong*, for the petitioners.
*Andrew D. Weiss*, for the respondent.

### OPINION

WRIGHT, *Judge*: This case is before the Court on petitioners' motion for summary judgment upon the section 1038(a) issue. The issue for decision is whether petitioners are entitled to nonrecognition of gain pursuant to section 1038(a) with respect to real property which they reacquired in 1981.

Respondent determined a deficiency in petitioners' Federal income tax for calendar year 1981 in the amount of $443,100 and an addition to tax under section 6653(a)[1] in the amount of $22,155. A portion of this deficiency was based on respondent's determination that petitioners had ordinary income of $693,906 on the reacquisition of certain property.

In September 1976, Plaza Management Corp., which was wholly owned by petitioner Ray R. Conners, opened escrow on 11.3 acres of land in Solvang, California. This land was originally owned by Earle Petersen and was zoned

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year here in issue.

"professional-institutional." Mr. Petersen obtained approval to rezone 9.7 acres of the land "designed residential" and prepared plans for a 48-unit town house project. This development plan was approved by Santa Barbara County. During 1976, the savings and loan association which held the mortgage on the property foreclosed on Mr. Petersen's loan and acquired the land. Plaza Management then sought to purchase the land from the savings and loan association but could not generate investor interest, and in May 1977, Mr. and Mrs. Conners assumed Plaza Management's position in the escrow and purchased the property for $218,313. At that time, the property had flood control problems and Mr. Conners obtained fill dirt to control those problems. Plaza Management had an architect redesign the buildings to be constructed on the property and obtained approval for an amendment to the development plan in September 1978. On June 21, 1979, petitioners sold the property to Alamo Pintado, a limited partnership, for $730,000. They received $10,000 in cash and a promissory note for $720,000 which was secured by a purchase money deed of trust containing release and subordination clauses.

On June 30, 1979, Plaza Management entered into a sales commission agreement with Alamo Pintado. The agreement provided that Plaza Management would receive a fee of $95,000 for amending the development plan and the flood control work done prior to Alamo Pintado's purchase, a 3-percent commission on the sale of each condominium, and 50 percent of the net profits on the condominium sales. In August of 1979, Mr. and Mrs. Conners agreed to subordinate the deed of trust to a construction loan from Security Pacific National Bank in the amount of $3,350,000. Alamo Pintado then began construction of the town house units on the property. Pursuant to the sales commission agreement, Plaza Management assisted with the sales of 21 condominium units and received a 3-percent commission on these sales.

Alamo Pintado was unable to sell the rest of the units and defaulted on the note to petitioners. Alamo Pintado had made no payments on the note. Although the release clause provided for a $15,000 payment on the sale of each condominium unit, petitioners were forced to forego such

payment under the terms of the construction loan because Alamo Pintado was delinquent on its interest payments to Security Pacific. Alamo Pintado terminated Plaza Management's agency with respect to the sales of the condominium units. On June 26, 1981, an agreement was signed which provided that Alamo Pintado could satisfy its obligation to Mr. and Mrs. Conners by conveying the deed to six condominium units in lieu of exercising their right to foreclose on the property.

On their 1981 Federal income tax return, petitioners reported rental income from the six condominium units they received from Alamo Pintado. They did not recognize any gain on the repossession of the property. The parties have agreed that there was no gain to petitioners on their reacquisition of the land underlying the condominium units and on six forty-eighths of the common land. Therefore, the issue remaining with respect to the taxable year 1981 is whether petitioners must recognize gain on the acquisition of the improvements on the property.

As a general rule under section 1038, if a sale of real property gives rise to indebtedness to the seller which is secured by the property and the seller reacquires such property in partial or full satisfaction of such indebtedness, no gain or loss shall be recognized to the seller on the reacquisition.[2] Petitioners allege that they acquired the six

---

[2]Sec. 1038 provides, in pertinent part:

SEC. 1038(a). GENERAL RULE.—If—

(1) a sale of real property gives rise to indebtedness to the seller which is secured by the real property sold, and

(2) the seller of such property reacquires such property in partial or full satisfaction of such indebtedness,

then, except as provided in subsections (b) and (d), no gain or loss shall result to the seller from such reacquisition, and no debt shall become worthless or partially worthless as a result of such reacquisition.

(b) AMOUNT OF GAIN RESULTING.—

(1) IN GENERAL.—In the case of a reacquisition of real property to which subsection (a) applies, gain shall result from such reacquisition to the extent that—

(A) the amount of money and the fair market value of other property (other than obligations of the purchaser) received, prior to such reacquisition, with respect to the sale of such property, exceeds

(B) the amount of the gain on the sale of such property returned as income for periods prior to such reacquisition.

(2) LIMITATION.—The amount of gain determined under paragraph (1) resulting from a reacquisition during any taxable year beginning after the date of the enactment of this section shall not exceed the amount by which the price at which the real property was sold exceeded its adjusted basis, reduced by the sum of—

condominium units in satisfaction of the debt and that they need not recognize gain under section 1038(a). Respondent argues, however, that the property acquired by petitioners is substantially different from that which they sold and that therefore gain must be recognized pursuant to section 1038(b)(1).

Section 1038 was added to the Code by section 2(a) of Public Law 88-570 on September 2, 1964. Prior to the enactment of section 1038, a repossession of real property was treated as a taxable exchange under section 453. S. Rept. 1361, 88th Cong., 2d Sess. (1964), 1964-2 C.B. 828, 831. If the initial sale of the property had been reported as an installment sale, the gain on repossession was treated as the difference between the fair market value of the property at time of repossession, including improvements thereon, and the basis of the purchaser's obligations which were discharged by the reacquisition of the property. Sec. 1.453-5(b)(2), Income Tax Regs. If the initial sale was not reported on the installment basis, the gain on repossession was equal to the difference between the sum of the fair market value of the property at the time of repossession, including improvements thereon, and the amount of payments actually received and retained, less any gain previously reported. Sec. 1.453-6(b)(1), Income Tax Regs.

The legislative history of section 1038 indicates that Congress felt it was inappropriate to measure gain upon repossession of the property by reference to the fair market value at the time of the repossession because (1) the taxpayer was actually in no better position than he was before he made the sale; (2) valuation at the time of repossession was difficult; (3) to tax the initial seller on gain at the time of repossession was to tax him on gain not yet realized; and (4) because the taxpayer had not received a monetary return with respect to the property, funds to pay

---

(A) the amount of the gain on the sale of such property returned as income for periods prior to the reacquisition of such property, and

(B) the amount of money and the fair market value of other property (other than obligations of the purchaser received with respect to the sale of such property) paid or transferred by the seller in connection with the reacquisition of such property.

For purposes of this paragraph, the price at which real property is sold is the gross sales price reduced by the selling commissions, legal fees, and other expenses incident to the sale of such property which are properly taken into account in determining gain or loss on such sale.

the taxes may be unavailable. S. Rept. 1361, *supra*, 1964-2 C.B. at 828.

Respondent argues that petitioners in the instant case do not fit within the ambit of section 1038 because, contrary to the congressional intent underlying that section, petitioners here were in a better position following the reacquisition of the property. Respondent alleges that the property was more salable after the condominiums were built. The record indicates, however, that petitioners reacquired the property because the developer was unable to sell the condominiums. Therefore, we do not find that petitioners were in any better position following the reacquisition than prior to the original sale. To the extent that petitioners did not receive monetary remuneration for the property, to tax them at this point would be to require the recognition of gain not yet realized, out of funds not yet received.[3]

The regulations under section 453, described above, are generally effective only for taxable years beginning before September 3, 1964. Secs. 1.453-5(b)(7) and 1.453-6(d), Income Tax Regs.[4] These regulations specifically note that the amount realized includes any improvements on the property by the purchaser. Neither section 1038 nor the regulations thereunder contain such a reference. Respondent contends, however, that his determination is supported by this Court's opinion in *Smith v. Commissioner*, 58 T.C. 874 (1972). The issue in that case was whether the taxpayers were entitled to tack the holding period of improvements on real property, which was reacquired after the buyer defaulted, to the holding period of the underlying land.

The taxpayers in *Smith* sold an undeveloped piece of property on which the purchasers constructed 18 apartment buildings. Nine of these apartment buildings were sold by the purchasers. The purchasers then defaulted on their note. The taxpayers reacquired the unsold portion of the property and recognized no gain on the repossession under section 1038(a). When the taxpayers subsequently sold two of the nine remaining apartment buildings, they reported the gain

---

[3]Because of the conclusions we reach herein, we need not reach the issue of valuation of the improvements on the real property reacquired by petitioners.

[4]The taxpayer could elect, however, to have the regulations under sec. 1038 apply to taxable years beginning after Dec. 31, 1957, and before Sept. 3, 1964, if assessments or refunds for such years were not barred by the statute of limitations. Sec. 1.1038-3, Income Tax Regs.

on the sale as long-term capital gain. Respondent determined, however, that a portion of this gain was short-term capital gain because taxpayers could not tack their holding period for the apartment buildings to their original holding period for the land under section 1.1038-1(g)(3), Income Tax Regs. That section provides that "for purposes of determining gain or loss on a disposition of *such property* after its reacquisition the period for which the seller has held the real property at the time of such disposition shall include the period for which such property is held by him prior to the original sale." (Emphasis added.) We held that the taxpayers were entitled to tack their original holding period for the land to their holding period for the land after it was reacquired, but that they must begin a new holding period for the improvements on the property. We also upheld respondent's allocation of the taxpayers' basis in the reacquired property, which required the taxpayers to apply their entire basis in the note to the land, leaving them with a zero basis in the improvements. Thus, on the sale of the property, the taxpayers recognized a long-term capital gain to the extent the amount realized with respect to the land exceeded their basis therein, and a short-term capital gain with respect to the improvements to the extent of the full amount realized therefor.

While the facts in *Smith* are similar to the facts at issue in this case, the issue of recognition of gain on the acquisition of improved property was not raised. In the instant case, respondent contends that because we found that improvements to property were not "such property" within the meaning of section 1.1038-1(g)(3), Income Tax Regs., we must extend this meaning to section 1038(a)(2) of the Code. It is implicit, however, in both the Court's decision and respondent's position in *Smith* that the repossession of improved property in satisfaction of an obligation resulting from the sale of the same property prior to improvements is entitled to nonrecognition treatment under section 1038. This result comports with the congressional intent described in the legislative history of section 1038. The taxpayer who reacquires property is not required to recognize gain until the property is sold, providing cash to pay the tax. At the same time the taxpayer is not in a

better position than he was prior to the sale because he takes the improvements with a new holding period and a zero basis. Thus, the recognition is postponed until the property is sold but it will be fully recognized at that time. Therefore, we hold that petitioners are entitled to nonrecognition treatment of the gain realized on the reacquisition of the property pursuant to section 1038(a).

Respondent alleges, on brief, that if section 1038(a) applies to this transaction, petitioners must recognize gain pursuant to section 1038(b). Section 1038(b) requires that if a taxpayer reacquires property to which section 1038(a) applies, gain must be recognized to the extent that the amount of money and the fair market value of other property (other than obligations of the purchaser) received, prior to the reacquisition, with respect to the sale of the property, exceed the amount of the gain previously reported as income. Respondent contends that petitioners should have recognized a gain on their 1981 Federal income tax return in the amount of $153,418 under section 1038(b). This amount is based on the $10,000 downpayment received by petitioners in 1979 and the relief of indebtedness in the amount of $152,600 under the agreement entered into between petitioners and Alamo Pintado on June 21, 1979. The agreement provides that the buyer of the property, Alamo Pintado, would take the property subject to the existing trust deed in the amount of $152,600. Petitioners concede, on brief, that the $152,600 of discharge of indebtedness income had not been reported prior to petitioners' repossession of the property and that the remaining gain on the $10,000 cash received in 1979 also remained unreported. Petitioners must, therefore, recognize these amounts under section 1038(b) for taxable year 1981.

To reflect the foregoing,

*An appropriate order will be issued.*