ALFRED E. AND MARY ANN KREGEAR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kregear v. Commissioner
Docket No. 16013-85.
United States Tax Court
T.C. Memo 1987-258; 1987 Tax Ct. Memo LEXIS 258; 53 T.C.M. (CCH) 869; T.C.M. (RIA) 87258; May 21, 1987. Alfred E. Kregear, pro se. Gary L. Bloom, for the respondent. DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rules 180, 181 and 182. [1] For convenience and clarity, the findings of fact and conclusions of law have been combined in this opinion. *260 Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1979, 1980 and 1981 in the amounts of $1,039.35, $80.54 and $1,129.07, respectively. The issues for decision are (1) whether petitioners' gain on an installment sale is ordinary gain under section 1245 or is treated as capital gain under section 1231 and (2) whether petitioners were required to report gain on the reacquisition of the property under section 1038. [2]
Some of the facts have been stipulated. The stipulations of fact and exhibits attached thereto are incorporated herein by this reference. At the time they filed their petition herein petitioners resided in McAlister, Oklahoma. In 1979, petitioners sold an automobile racetrack located in Michigan under the installment sales method provided for in section 453. The contract sales price was $125,000. The sales agreement allocated $83,710.00 to the real property and $41,290 to *261 the personal property. The parties agree that the adjusted basis in the entire property was $74,399.63, [3] that the gross profit ratio on the entire sale was 40.48 percent, and that the first year payment was $15,000, $6,072 of which was gain. The parties disagree on the characterization of the gain. The buyer of the racetrack stopped making installment payments at the end of 1979. Petitioners repossessed the racetrack in March, 1981 and resold it in 1982 for $70,000. Original Sale
In 1979, petitioners reported the gain from the sale of the racetrack as capital gain because they believed the "preponderance" of the gain was related to the real property. They argue that a portion of the equipment sold with the racetrack was not section 1245 property because it was affixed to the real property which had been depreciated under the straight line method. Respondent contends that petitioners sold equipment which was not affixed to the real property and which had been depreciated so that *262 the equipment was subject to the recapture rules of section 1245. In the context of this case, section 1245 property means personal property which has been depreciated. This section provides as a general rule that the amount by which the lower of the recomputed basis of the property or the amount realized on the sale, exchange, or involuntary conversion (or the fair market value on any other disposition) exceeds the adjusted basis shall be treated as ordinary income. Such gain is recognized notwithstanding any other provisions of subtitle A of the Code. These provisions, known as recapture provisions, are integrated into the installment sale rules of section 453 by section 1.1245-6(d), Income Tax Regs. The general rule is that all the income from an installment payment shall "be deemed to consist of gain to which section 1245(a)(1) applies until all such gain has been reported." It is clear that petitioners realized section 1245 gain upon the sale of the racetrack in 1979. We do not, however, agree with the amount of the section 1245 gain as determined by respondent. In determining the amount of section 1245 gain realized on the sale of the racetrack, respondent lumped together *263 all of the assets sold. Because the sales price of a sole proprietorship must be "comminuted into its fragments," Williams v. McGowan,152 F.2d 570, 572 (2d Cir. 1945), an allocation of the gain must be made. See Plese v. Commissioner,T.C. Memo. 1978-326. The allocation must be based on the fair market value of the assets at the time of the sale. Allan v. Commissioner,86 T.C. 655, 668 (1986); section 1.1245-1(a)(5), Income Tax Regs.
Petitioners contend that the allocation should be made based upon the assets' historic costs. Petitioner Alfred Kregear also testified that some of the property that respondent determined was personal property, was affixed to the real property and was therefore no longer personal property. While we found Mr. Kregear's testimony to be credible, petitioners have not overcome their burden of proving that the respondent's determination was wrong. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Mr Kregear's testimony about the cost of the personal property is not relevant to the fair market value of the assets at the time of sale and does not alter the allocations made by the *264 parties to the sales agreement, which respondent determined represented the fair market value of the real and personal property. Mr. Kregear's testimony about the cost of the property also is insufficient to show that respondent's determination of the basis of the section 1245 property is erroneous. He only testified about the cost of the personal property which he believed was not affixed to the real property. It is impossible from this testimony to determine if the basis of all the personal property was different from the basis determined by respondent. We therefore accept respondent's determination that the adjusted basis in the personal property was $12,634.13. We also accept respondent's determination that the recomputed basis in the personal property was $25,155.62. In addition, the basis in the real property must be equal to the entire adjusted basis minus the adjusted basis in the personal property or $61,765.50. Based upon the foregoing allocations, the gross profit ratio for each type of asset is calculated as follows: Personal Property
Real Property
Selling price
$41,290.00
$83,710.00
Less adjusted basis
12,634.13
61,765.50
Gross profit
$28,655.87
$21,944.50
Gross Profit =
Gross Profit
28,655.87=69.40%
21,944.50=26.21%
Contract Price
Ratio
41,290.00
83,710.00
*265 Based upon the parties' allocation of the $125,000 sales price between real and personal property, as set forth in the sales agreement, in the amounts of $83,710 and $41,290, respectively, the portion of the $15,000 received by petitioners in 1979 attributable to the real and personal property is calculated as follows: Real Property
$83,710
=
66.968% X $15,000
=
$10,045.20
125,000
Personal Property
$41,290
=
33.032% X $15,000
=
$ 4,954.80
125,000
The gain on the personal property portion of the $15,000 therefore is $3,438.63 (personal property portion of $15,000 payment X gross profit ratio = $4,954.80 X 69.40% = $3,438.63). The potential recapture from the sale of the personal property in this case is the difference between the recomputed basis and the adjusted basis of the personal property or $12,521.49. Accordingly, the entire gain realized on the sale of the personal property in 1979 is ordinary income. Section 1.1245-6(d), Income Tax Regs. The gain realized on the sale of the real property is $2,633.37 which is treated as capital gain under section 1231(a). ($15,000 X 40.48% = $6,072.00 - 3,438.63 = $2,633.37.) Reacquisition
*266 Although respondent recognized that the sale of the racetrack in 1979 constituted the sale of both real and personal property, he determined that, when the racetrack was reacquired by petitioners in 1981, the reacquisition was, in toto, subject to the provisions of section 1038. Petitioners, on the other hand, contend that it is inequitable to tax them on the repossession of the racetrack in 1981, when they sold the racetrack at a "loss" in 1982. Because respondent did not treat the reacquisition of the racetrack in 1981, as the reacquisition of real and personal property and, because petitioners argued only equitable considerations pertaining to their 1981 repossession of the racetrack, this issue was not adquately briefed by the parties, nor was adequate evidence about a key element of the gain on the 1981 reacquisition of the racetrack presented at trial. We will attempt, therefore, to reach an adequate decision on this issue from an inadequate record. The reacquisition of the property in 1981 was a disposition of the installment note. The disposition is treated as a sale or exchange of the note and triggers the remaining gain inherent in the note. Estate of Delman v. Commissioner,73 T.C. 15, 36 (1979). *267 Therefore, the gain or loss to be realized upon the disposition is equal to the difference between the amount realized and the basis in the obligation. Section 453B(a). The amount realized equals the fair market value of the property at the time of reacquisition. The fair market value at the time of the reacquisition is the key element missing from evidence in this case. The two pieces of information that we do have are the original sale price in 1979 and the resale price in January, 1982. [4] In 1979, the racetrack sold for $125,000 and in 1982 it sold for $70,000. Mr. Kregear testified that shortly after the repossession he discovered that the racetrack had suffered severe water damage while it was not in petitioners' possession. The 1982 sales price and Mr. Kregear's testimony about the condition of the racetrack after the repossession may not be used to determine the fair market value of the property at the time of repossession because they are subsequent events. Generally, subsequent events may not be relied upon to establish fair market value except to the extent that they establish that "expectations were entertained and that such expectations were reasonable and intelligent. *268 " Couzens v. Commissioner,11 B.T.A. 1040, 1165 (1928). There is nothing in the record to indicate petitioners' expectations about the value of the property at the time of repossession, and we therefore may not use the 1982 sales price or Mr. Kregear's testimony to determine fair market value. We can only conclude that the $125,000 sales price in 1979 reflects the price at which the property would change hands between a willing buyer and a willing seller in 1981. Therefore, we find that the amount realized by petitioners on the reacquisition was $125,000. The seller's basis in the obligation is the "excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full." Section 453(B)(b) and section 1.453-9(b)(2), Income Tax Regs. In other words, the basis of the obligation equals the outstanding debt (i.e., the face amount of the note minus any payments on the note) minus the outstanding debt multiplied *269 by the gross profit ratio realized on the sale or exchange. To acknowledge the "comminuted fragments," of the sale or exchange, this may be calculated as follows: Personal
Real
Property
Property
Face Value
$41,290.00 $83,710.00 Minus payments
4,954.80 10,045.20 Outstanding debt
36,335.20 73,664.80 Less gross profit ratio
(69.4%) (26.21%) X outstanding debt =
25,216.63 19,307.54 Basis in the obligation
$11,118.57
$54,357.26
Therefore, the amount of gain realized can be calculated as follows: Personal
Real
Property
Property
Amount realized
$41,290.00
$83,710.00
Basis in the obligation
11,118.57
54,357.26
Gain realized
30,171.43
29,352.74
The gain realized on the personal property will be $30,171.43. The character of the gain is determined as if it were a sale of the underlying property. Section 453B(a). The sale of the underlying property was subject to the provisions of section 1245 to the extent that the recomputed basis exceeded the adjusted basis, or $12,521.49. Of that amount, $3,438.63 has already been recaptured. Therefore, the gain on the personal property resulting *270 from the disposition of the note is "deemed to consist of gain to which section 1245(a)(1) applies until all such gain has been reported." Of the $30,171.43 gain realized on the reacquisition of the personal property $9,082.86 is ordinary income under section 1245(a). ($12,521.49 - 3,438.63.) The character of the remainder of the gain is section 1231 gain from the sale of assets used in a trade or business. The gain realized on the reacquisition of the real property will be controlled by the provisions of section 1038. Section 1038 provides that if a sale of real property gives rise to a debt secured by the property sold, and the seller repossesses the property in satisfaction of the debt, no gain will result except to the extent that the amount of payments received prior to the reacquisition exceeds the amount of income reported by the seller prior to the reacquisition. The gain realized by petitioners upon the reacquisition of the real property portion of the racetrack is calculated as follows: Amount received in prior years
$10,045.20
Amount which should
have been reported as income [5]
2,633.37
Gain recognized
$ 7,411.83
This amount is limited by section *271 1038(b)(2) [6] which in this instance is not applicable. On the reacquisition of real property sold on the installment method the character of the gain is determined as if there were a sale of the underlying property. Section 1.1038-1(d), Income Tax Regs.
Petitioners argue that they should not be required to report gain in the year of the reacquisition because they subsequently sold the racetrack at a loss. The language of section 1038, however, is mandatory. We may not disregard the plain language of the statute. Because of our findings of fact and conclusions of law, supra, petitioners' deficiency in tax for 1979 is decreased and their gain from the reacquisition of the racetrack in 1981 is substantially increased. We may not, however, determine a deficiency for 1981 in a larger amount than determined by respondent in his statutory notice of deficiency since respondent has not sought an increased deficiency for 1981 in any proper *272 pleading. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The deficiency in 1980 is the result of recalculating the petitioners' tax by using income averaging. The parties did not dispute this amount at trial. The actual amount will vary depending on the characterization of gain realized in 1979.↩
3. On brief, respondent calculated petitioners' basis to be $74,398.70. The two figures are close enough for us to accept petitioners' figure as the adjusted basis in the entire property.↩
4. The parties stipulated that the resale of the property took place on January 2, 1982, but the contract is dated October 26, 1981. There is no explanation in the record for this discrepancy.↩
5. See page 6, supra.↩
6. For purposes of this case the section 1038(b)(2) limitation amount is equal to the selling price less the sum of the adjusted basis, any gain returned as income in prior taxable periods, and any added costs.↩