142 T.C. No. 17

UNITED STATES TAX COURT

MARVIN E. DEBOUGH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22894-12.                    Filed May 19, 2014.

P sold his primary residence in 2006 pursuant to an installment sale agreement. The buyers' indebtedness was secured by the residence. Pursuant to I.R.C. sec. 121, P excluded $500,000 in gain on the sale. In 2009 the buyers defaulted on the deed and P reacquired the property. In a notice of deficiency to P, R determined that P was required to recognize long-term capital gain on the reacquisition of the property, including the $500,000 that P had previously excluded from gain.

<u>Held</u>: P is required to recognize long-term capital gain on the reacquisition of the property, pursuant to I.R.C. sec. 1038, including gain previously excluded under I.R.C. sec. 121.

<u>Matthew L. Fling</u>, for petitioner.

<u>John Schmittdiel</u> and <u>Randall L. Eager</u>, for respondent.

OPINION

NEGA, Judge: Respondent determined a deficiency in petitioner's Federal income tax under section 1038(b)[1] of $58,893 for taxable year 2009. The sole issue in this case is whether petitioner underreported his long-term capital gains as a result of his failure to recognize gain pursuant to section 1038 on the reacquisition of property where gain had been previously excluded under section 121.

Background

All of the facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found except as stated below. Petitioner resided in Delano, Minnesota, at the time he filed his petition.

Petitioner purchased his personal residence and the surrounding 80 acres of mixed-use land (property) in 1966 for $25,000.[2] On July 11, 2006, petitioner agreed to sell the property to the Stonehawk Corp. and Catherine Constantine

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioner's purchase cost is listed in various filings with the Court as either $24,000 or $25,000. The parties' joint stipulation of facts uses $25,000 as his cost basis, and we use this number in our calculation of petitioner's adjusted basis.

Properties, Inc. (buyers), on a contract for deed of $1,400,000. The contract included the following terms:

> (a)     Purchaser shall pay to Seller, at his direction, the sum of One Million Four Hundred Thousand and no/100 (1,400,000.00), as and for the purchase price (Purchase Price) for the Property, payable as follows: $250,000.00 in hand paid receipt of which is hereby acknowledged. Interest shall accrue on July 11, 2006.
>
> The balance of $1,150,000.00 shall be paid as follows:
>
> The sum of $250,000.00 is due on July 12, 2007 plus interest at the rate of five (5%) percent per annum.
>
> The balance of $900,000.00 shall be paid as follows:
>
> The sum of $25,000.00 which includes interest at the rate of five (5%) percent per annum shall be made on the 11th day of January 2008 and the 11th day of July 2008 and a like sum on the same two days of each year thereafter until July 11, 2014, when the entire balance shall become due and payable.

Petitioner originally reported an adjusted basis in the property of $742,204. Petitioner calculated his basis in the property by adding (i) half of $25,000--the original cost of the home, (ii) half of $50,000--capital improvements before sale, (iii) $700,000--stepped-up basis from his deceased spouse, and (iv) $4,704-- commissions and other expenses of sale. In the parties' joint stipulation of facts, respondent and petitioner stipulated a basis of $779,704.[3] Using his originally

---

[3]We are unsure how petitioner and respondent arrived at this number.

(continued...)

calculated basis of $742,204, petitioner reported gain on the sale of the property of $657,796, the difference between the gross sales price of $1,400,000 and the adjusted basis of $742,204.

After his wife's death petitioner received a $250,000 payment related to the sale of the property during the 2006 taxable year. Petitioner and his deceased spouse reported this income on Form 6252, Installment Sale Income, attached to their Form 1040, U.S. Individual Income Tax Return, for the 2006 taxable year. Petitioner and his deceased spouse calculated their reportable gain for tax year 2006 by (i) excluding $500,000 of gain pursuant to section 121, (ii) calculating their gross profit percentage by dividing the $157,796 in remaining gain ($657,796–$500,000 = $157,796) by the $1,400,000 sale price exclusive of commissions and other costs of sale, and (iii) multiplying the gross profit percentage by the amount of money received in 2006. Petitioner reported installment sale gain for 2006 of $28,178 on the basis of these calculations.

Petitioner received another $250,000 payment related to the property during 2007, which he reported on his 2007 Form 1040. Using the same gross profit percentage as he used for 2006, petitioner reported $28,178 in taxable gain on his

[3](...continued)
However, stipulations are generally treated as conclusive admissions. Rule 91(e). We therefore accept the parties' stipulated basis.

2007 return. Petitioner received a $5,000 payment related to the property during 2008, which he reported on his 2008 Form 1040. Again using the same gross profit percentage as he had used for 2006 and 2007, petitioner reported gain of $564 for 2008. In total, petitioner reported $56,920 in gain over the course of tax years 2006, 2007, and 2008.

Subsequently, the buyers failed to comply with the terms of the contract for deed. On May 29, 2009, petitioner's agent served the buyers with a notice of cancellation of contract for deed. The buyers failed to cure the default or to respond to the notice of cancellation of contract for deed. As a result, petitioner reacquired the property on or about July 29, 2009. Petitioner incurred $3,723 in costs related to repossession of the property.

Petitioner treated his reacquisition of the property in 2009 as a reacquisition of property in full satisfaction of indebtedness under section 1038. Petitioner recognized $97,153 in the form of long-term capital gains related to the reacquisition of the property on his 2009 Form 1040. Petitioner subsequently filed a Amended Form 1040A, U.S. Individual Income Tax Return, for 2009 that removed the $97,153 in long-term capital gains. However, the parties have stipulated and agreed that petitioner was, at a minimum, obligated to report

$97,153 in long-term capital gains related to the sale and reacquisition of the property for the 2009 taxable year.

Respondent mailed petitioner a notice of deficiency (notice) dated June 18, 2012, prepared by the St. Paul Office of the Internal Revenue Service (IRS) with respect to tax year 2009. In the notice respondent determined that petitioner was required to recognize $443,644 in long-term capital gains related to the sale and reacquisition of the property. Respondent later recalculated this amount to be $448,080 because of the omission of the $5,000 payment petitioner received in taxable year 2008 and respondent's failure to account for the tax attributable to this payment that petitioner had previously reported under the installment sale method. Respondent calculated the $448,080 in long-term capital gains by subtracting the $56,920 petitioner had reported for tax years 2006, 2007, and 2008 from the total $505,000 in cash petitioner had received over those same years. Petitioner timely filed a petition with the Court seeking redetermination of the deficiency set forth in the notice.

## Discussion

### I.     Burden of Proof

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); see Welch v.

Helvering, 290 U.S. 111, 115 (1933). The Commissioner typically bears the burden of proof with respect to any increase in deficiency. Rule 142(a). However, because our conclusions are based on the preponderance of evidence, we need not decide whether petitioner or respondent bears the burden of proof. See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008).

## II.    Interplay of Sections 121 and 1038

The sole issue for decision in this case involves the interplay between sections 121 and 1038. Section 121 allows electing taxpayers to exclude gain resulting from the sale or exchange of property if the property has been owned and used as their principal residence for periods aggregating two or more years over the five-year period before sale. Section 121(b) applies certain limitations on the amount of gain that can be excluded. Unmarried taxpayers may exclude up to $250,000 in gain from the sale of a qualifying residence. Sec. 121(b)(1). Married taxpayers meeting certain requirements and filing a joint return can exclude up to $500,000 in gain from the sale of a qualifying principal residence. Sec. 121(b)(2)(A). Taxpayers may exclude gain from the sale of a principal residence under section 121 only once every two years. Sec. 121(b)(3).

Congress added section 1038 to the Code by the Act of September 2, 1964, Pub. L. No. 88-570, sec. 2, 78 Stat. at 854. Before the enactment of section 1038,

reacquisition of real property was treated as a taxable exchange under section 453. S. Rept. No. 88-1361, at 5 (1964), 1964-2 C.B. 828, 831.  If, as in this case, the initial sale of the property was reported as an installment sale, gain or loss on reacquisition of the property was treated as the difference between the fair market value of the property at the time of reacquisition, including improvements thereon, and the basis of the purchaser's obligations which were discharged by the repossession of the property.  Sec. 1.453-5(b)(2), Income Tax Regs.  Congress added section 1038 to remedy situations where taxpayers were forced to recognize gain upon repossession of property by reference to the fair market value at the time of repossession.  S. Rept. No. 88-1361, supra at 1-3, 1964-2 C.B. at 828-829. Congress believed measuring gain in this manner was inappropriate "because (1) the taxpayer was actually in no better position than he was before he made the sale; (2) valuation at the time of repossession was difficult; (3) to tax the initial seller on gain at the time of repossession was to tax him on gain not yet realized; and (4) because the taxpayer had not received a monetary return with respect to the property, funds to pay the taxes may be unavailable." Conners v. Commissioner, 88 T.C. 541, 544-545 (1987) (citing S. Rept. 1361, supra, 1964-2 C.B. at 828).

Section 1038 provides rules for computing gain when a seller repossesses real property in satisfaction of a debt secured by that real property. Generally, section 1038 restores the seller to his position before the sale of the property by ignoring gain or loss upon repossession. However, if the seller has received "money and * * * other property" as payments before the repossession, section 1038 taxes the seller on gain attributable to these payments "to the extent that these amounts have not previously been reported as income." Sec. 1038(b)(1); S. Rept. No. 88-1361, supra at 6, 1964-2 C.B. at 832; see also Greene v. Commissioner, 76 T.C. 1018, 1025 (1981) ("Congress intended that the gain which a taxpayer would be responsible for reporting upon repossession should not exceed the payments he actually had received prior to that time."). Specifically, section 1038(a) and (b) provides:

SEC. 1038. CERTAIN REACQUISITIONS OF REAL PROPERTY.

(a) General Rule.--If--

(1) a sale of real property gives rise to indebtedness to the seller which is secured by the real property sold, and

(2) the seller of such property reacquires such property in partial or full satisfaction of such indebtedness,

then, except as provided in subsections (b) and (d), no gain or loss shall result to the seller from such reacquisition, and no

debt shall become worthless or partially worthless as a result of such reacquisition.

(b) Amount of Gain Resulting.--

(1) In general.--In the case of a reacquisition of real property to which subsection (a) applies, gain shall result from such reacquisition to the extent that--

(A) the amount of money and the fair market value of other property (other than obligations of the purchaser) received, prior to such reacquisition, with respect to the sale of such property, exceeds

(B) the amount of the gain on the sale of such property returned as income for periods prior to such reacquisition.

(2) Limitation.--The amount of gain determined under paragraph (1) resulting from a reacquisition during any taxable year beginning after the date of the enactment of this section shall not exceed the amount by which the price at which the real property was sold exceeded its adjusted basis, reduced by the sum of--

(A) the amount of the gain on the sale of such property returned as income for periods prior to the reacquisition of such property, and

(B) the amount of money and the fair market value of other property (other than obligations of the purchaser received with respect to the sale of such property) paid or transferred by the seller in connection with the reacquisition of such property.

For purposes of this paragraph, the price at which real property is sold is the gross sales price reduced by the selling

commissions, legal fees, and other expenses incident to the sale of such property which are properly taken into account in determining gain or loss on such sale.

(3) Gain recognized.--Except as provided in this section, the gain determined under this subsection resulting from a reacquisition to which subsection (a) applies shall be recognized, notwithstanding any other provision of this subtitle.

A seller who reacquires section 1038 property adjusts his basis in the property in accordance with section 1038(c), which provides:

SEC. 1038(c).  Basis of Reacquired Real Property.--If subsection (a) applies to the reacquisition of any real property, the basis of such property upon such reacquisition shall be the adjusted basis of the indebtedness to the seller secured by such property (determined as of the date of reacquisition), increased by the sum of--

(1) the amount of the gain determined under subsection (b) resulting from such reacquisition, and

(2) the amount described in subsection (b)(2)(B).

If any indebtedness to the seller secured by such property is not discharged upon the reacquisition of such property, the basis of such indebtedness shall be zero.

Congress contemplated the potential interaction between section 1038 and section 121 by including section 1038(e), which provides:

SEC. 1038(e).  Principal Residences.--If--

(1) subsection (a) applies to a reacquisition of real property with respect to the sale of which gain was not

recognized under section 121 (relating to gain on sale of principal residence); and

(2) within 1 year after the date of the reacquisition of such property by the seller, such property is resold by him,

then, under regulations prescribed by the Secretary, subsections (b), (c), and (d) of this section shall not apply to the reacquisition of such property and, for purposes of applying section 121, the resale of such property shall be treated as a part of the transaction constituting the original sale of such property.

Section 1038(e) provides taxpayers with a "special rule" that "in effect ignores the repossession * * * where the residence is again sold in a reasonable time." S. Rept. No. 88-1361, supra at 7, 1964-2 C.B. at 832.

Petitioner and respondent agree that section 1038(e) does not govern the instant case since petitioner did not resell the property within one year of repossession. However, they disagree about the import of section 1038(e). Respondent argues that section 1038(e) confirms that Congress was aware of the interplay between sections 1038 and 121 and drafted section 1038(e) as a limited response thereto; the absence of a "more generous provision" regarding the overlap of sections 1038 and 121 confirms that Congress intended for taxpayers in petitioner's situation to be treated under the general rules of section 1038. Petitioner argues that if Congress had intended to completely nullify the section

121 exclusion upon reacquisition of a taxpayer's principal residence, it would have drafted a provision explicitly so stating.

Respondent further argues that because petitioner does not meet the requirements for special treatment under section 1038(e), he is governed by the general rule under section 1038(b) requiring him to recognize gain upon repossession of the property to the extent of money and other property received before repossession. For the reasons enumerated below, we agree with respondent.

A.    Section 1038 Applies to Sale and Reacquisition of the Property.

The general rule of section 1038(a) is that if a sale of real property gives rise to indebtedness to the seller which is secured by the sold property and the seller reacquires such property in partial or full satisfaction of such indebtedness the seller does not recognize gain or loss upon the reacquisition. Conners v. Commissioner, 88 T.C. at 543. Section 1038(b) requires the seller to recognize gain if he has received "money" or "other property" to the extent these amounts exceed the amount of gain on the sale returned as income before reacquisition.

By its terms, petitioner's sale of his principal residence and subsequent reacquisition in satisfaction of indebtedness secured by the property falls within the ambit of section 1038. Petitioner sold the property to the buyers in exchange

for the contract for deed, which evidenced the buyers' indebtedness and petitioner's security interest in the property. After the buyers defaulted on the contract for deed, petitioner reacquired his former residence in full satisfaction of the indebtedness secured by the property. Stated simply, section 1038 applies squarely to the facts at issue. The only remaining inquiry, then, is whether petitioner must recognize gain previously excluded by reason of the section 121 exclusion.

B.   Petitioner Must Recognize Gain Previously Excluded Under Section 121.

Since section 1038 applies to the reacquisition of the property, we proceed to determine whether petitioner must recognize gain previously excluded under section 121. A reading of the statute leads to two important conclusions: (i) section 1038(e) expressly contemplates the sale and subsequent reacquisition of a seller's principal residence and (ii) other than section 1038(e), section 1038 does not contain any provision that would allow a taxpayer to exclude section 121 gain resulting from a sale and subsequent reacquisition of a principal residence.

As previously discussed, section 1038(e) contains a special rule for when the property sold is the taxpayer's principal residence and the taxpayer resells the residence within one year of reacquisition. In fact, section 1038(e) is titled

"Principal residences", indicating that Congress foresaw the potential interaction of sections 1038 and 121. Section 1038(e) thus operates as an exception to the general rule of section 1038 when the subject property is the seller's principal residence. Sellers fulfilling the requirements of section 1038(e) are essentially allowed to collapse the initial sale and subsequent resale into one transaction. The legislative history behind the section 1038(e) exception is unclear as to why Congress limited the exception to sellers who resell property within one year of reacquisition. Whatever the reasoning behind the exception, the relief offered by section 1038(e) is clearly limited to those sellers who resell their principal residences within one year of reacquisition. Since petitioner did not resell the property within one year of reacquisition, he is ineligible for the section 1038(e) exception and must recognize gain in accordance with the general rules of section 1038.

Petitioner argues that "[t]he statute is devoid of any language indicating that the [s]ection 121 exclusion would be disallowed on a reacquisition". Petitioner also argues that we should interpret the absence of any specific provision in section 1038 mandating recognition of previously excluded section 121 gain to mean that section 1038 does not apply to recapture section 121 gain under any circumstances. To the contrary, the flush language of section 1038(e) specifically

provides that section 1038(b), (c), and (d) shall not apply to the reacquisition of a principal residence, but only if the seller resells the residence within one year of reacquisition. Petitioner is understandably confused since the special rule of section 1038(e) is stated in the negative: sellers who reacquire a principal residence but then resell it within one year do not have to recognize gain under section 1038(b). However, the positive rule can be stated thusly: sellers who reacquire a principal residence but do not resell it within one year must recognize any gain under section 1038(b) because, unless section 1038(e) applies, section 1038 overrides the exclusion under section 121.

Additionally, the special rule in section 1038(e) calls to mind the statutory canon of construction "expressio unius est exclusio alterius", meaning that if a statute provides specific exceptions to a general rule, we may infer that Congress intended to exclude any further exceptions "'in the absence of evidence of a contrary legislative intent.'" United States v. Smith, 499 U.S. 160, 167 (1991) (quoting Andrus v. Glover Constr. Co., 446 U.S. 608, 616-617 (1980)); Catterall v. Commissioner, 68 T.C. 413, 421 (1977), aff'd sub nom. Vorbleski v. Commissioner, 589 F.2d 123 (3d Cir. 1978). Here, section 1038(e) is the only exception to the general rule of section 1038 requiring recognition of gain to the extent a seller receives money and other property before reacquisition. We are

disinclined to carve out other exceptions to section 1038 where Congress has not expressly done so.

C.   Recognition of Gain Conforms With the Intent of Section 1038 and the Economics of the Transaction.

Congress enacted section 1038 to remedy the hardship worked on sellers forced to recognize gain or loss purely on account of fluctuations in fair market value where upon repossession the sellers are in a position substantially similar to the position they were in before the sale.  However, Congress limited the nonrecognition of gain only to any change in the value of the underlying property, not to cash or other property received by the seller before reacquisition.  Sec. 1038(b); S. Rept. No. 88-1361, supra at 5, 1964-2 C.B. at 831 ("Your committee believes that it is inappropriate to measure gain upon repossession by reference to the fair market value of the repossessed property. * * * Apart from any payments he may have received, he actually is in no better position than he was before he made the sale." (Emphasis added.)).  Section 1038(b) requires recognition of gain where a seller receives "money" or "other property" before reacquisition and therefore occupies an improved position after reacquisition.

Petitioner received $505,000 in cash before the reacquisition of his former principal residence.  Petitioner has received "money" as defined within section

1038(b) that exceeds gain previously returned as income on the sale of the property during periods before the reacquisition.  We see nothing unfair in the Code's taxing petitioner on receipt of this income, as he is actually in a better position than he was before the sale by virtue of having ownership over both the property and $505,000.  See also Hovhannissian v. Commissioner, T.C. Memo. 1997-444, 74 T.C.M. (CCH) 752, 757 ("Section 1038(b) ensures that all receipts of cash and other property by the seller prior to reacquisition are taxed as income to return the seller to as close to status quo ante with respect to the reacquired property as circumstances will permit.").  The section 1038(b) requirement of recognition of gain is "mandatory and does not excuse any taxpayer from recognizing gain and paying taxes thereon".  Greene v. Commissioner, 76 T.C. at 1025; see also Kregear v. Commissioner, T.C. Memo. 1987-258, 53 T.C.M. (CCH) 869, 872 ("The language of section 1038, however, is mandatory.  We may not disregard the plain language of the statute.").

Our decision ensures that tax treatment of the transactions matches the underlying economic reality.  Petitioner received $505,000 in income and is taxed on that income absent any applicable exclusion or deduction.

D.    Our Interpretation of Section 1038 Accords With Basic Federal Income Tax Principles.

Respondent contends and we agree that application of section 1038 to the case at hand is consistent with the fundamental tenets of Federal tax law. Gross income has long been defined to include any accession to wealth, clearly realized, and over which the taxpayer has complete dominion. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Petitioner attempts to counter this basic principle of tax law by arguing that "every exclusion or deduction provided by Congress creates an exception to the taxation of wealth ascended to, and it is not reasonable to assume that by remaining silent on the question, Congress intended to nullify a tax benefit it has created." As noted, section 1038 is not silent on the taxation of gain previously excluded under section 121 since section 1038(e) provides a special rule for sellers who resell a principal residence within one year of reacquisition. Further, petitioner's argument acknowledges that it is Congress who must create exclusions and deductions in order for taxpayers not to be taxed on the receipt of income, and Congress has not created any exclusion or deduction applicable to petitioner. Petitioner's $505,000 is clearly an accession to wealth, and we agree with respondent that section 1038, in the absence of any statutory exceptions, mandates inclusion of that amount in petitioner's gross income.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.