*Decision will be entered for the respondent.*

G. VAN GREENE, JR., AND MINTA J. GREENE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9597–79. Filed June 15, 1981.

---

*Clyde W. Chapman,* for the petitioners.
*Charles P. Hanfman,* for the respondent.

OPINION

Scott, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for 1976 in the amount of $5,004.30. The issues for decision are (1) whether petitioners are entitled under section 1038(b)(1), I.R.C. 1954,[1] to calculate the amount of reportable long-term capital gain upon reacquisition of real property in 1976 by deducting the sales commissions and other selling costs incurred at the time of the original sale in 1974 from the difference between the sales proceeds received prior to the reacquisition and the gain previously reported; and (2) if the proper calculation under section 1038 requires petitioners to report long-term capital gain upon the reacquisition of the property in 1976, whether petitioners are liable for a minimum tax of $2,427.17 pursuant to sections 56(a) and 57(a)(9).

All of the facts have been stipulated and are found accordingly.

G. Van Greene, Jr. (petitioner), and Minta J. Greene, husband and wife, resided in Conyers, Ga., at the time of filing their petition in this case. Petitioners' joint Federal income tax return for the calendar year 1976 was prepared on the cash basis method of accounting and was timely filed with the Internal Revenue Service Center, Chamblee, Ga.

On July 1, 1968, petitioner purchased approximately 145.23 acres of land in Walton County, Ga., from Lilla Mae Walthour and Lena Delaperriere. Upon conveyance, petitioner signed a $20,000 promissory note in favor of the sellers. On December 17, 1968, petitioner purchased approximately 80.79 acres of land in Walton County, Ga., from E. L. Hollis. In partial payment for the 80.79 acres of land, petitioner signed a promissory note for $32,025 in favor of the seller. These two parcels of land are adjacent and aggregate 226.02 acres in Walton County, Ga. On July 26, 1974, petitioner's adjusted basis in the 226.02 acres was $70,329.55.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

On April 20, 1974, petitioner contracted to sell the 226.02 acres to North Star Development Co., Robert A. Bick, president. Thereafter, North Star Development Co. assigned the sales contract to Mr. Bick, John A. Nuzzulo, and George C. Robinson (Bick, Nuzzulo, and Robinson). On that date, the sale of the 226.02 acres between petitioner and Bick, Nuzzulo, and Robinson was consummated for $350,176. Petitioner received the sales proceeds as follows:

| *Item* | | *Amount* |
|---|---|---|
| Cash | | $10,844.33 |
| Note payable from Bick, Nuzzulo, and Robinson (payable Aug. 9, 1974) | | 14,000.00 |
| Real estate commissions: | | 35,017.60 |
| | Neal Jackson Realty & Mortgage Co. (cash) | $2,508.80 |
| | Scenic Realty & Investment Co. (note payable from buyer Jan. 24, 1975) | 15,000.00 |
| | Scenic Realty & Investment Co. (note paybable from buyer July 25, 1975) | 17,508.80 |
| Mortgage on property to E. L. Hollis paid by purchasers | | 9,208.29 |
| Seller's pro rata share of real property taxes | | 592.28 |
| Georgia recording tax | | 350.20 |
| Recording fee | | 22.50 |
| Purchase money mortgage on property from Bick, Nuzzulo, and Robinson | | 280,140.80 |
| Total | | 350,176.00 |

On their 1974 income tax return, petitioners elected to report the gain from the sale of the land on the installment basis method of accounting pursuant to section 453. They reported the gain as follows:

| Item | Amount |
|---|---|
| 1974 real estate: 226.02 acres | |
| Walton County, Ga. (7/26/74) ............................. | $350,176.00 |
| Cost (several years ago) ...................................... | [2] 105,719.85 |
| Potential profit: 69.80951% ................................. | 244,456.15 |
| Collected in 1974: $70,035.20 | |
| at 69.80951% ................................................ | 48,891.23 |

The $70,035.20 reported by petitioner as collected in 1974 consisted of the following items:

| Item | Amount |
|---|---|
| Cash ................................................................ | $10,844.33 |
| Note paid by Bick, Nuzzulo, | |
| and Robinson on Aug. 9, 1974 .................................. | 14,000.00 |
| Real estate commissions paid ..................................... | 35,017.60 |
| Mortgage on the property | |
| to E. L. Hollis paid by purchasers ............................. | 9,208.29 |
| Seller's pro rata share of taxes ...................................... | 592.28 |
| Georgia recording tax ................................................ | 350.20 |
| Recording fees ...................................................... | 22.50 |
| Total .......................................................... | 70,035.20 |

Neither Bick, Nuzzulo, nor Robinson made any of the required payments on his note and the purchase-money mortgage during 1975 and 1976. On July 21, 1975, Robinson deeded his interest in the 226.02 acres to Bick. On May 18, 1976, Bick and Nuzzulo deeded the entire 226.02 acres back to petitioner in satisfaction of the $280,140.80 purchase-money mortgage. At the time of repossession, petitioner incurred a $25 fee for a title check on the 226.02 acres.

On their 1976 income tax return, petitioners reported a loss of $14,271.33 upon the repossession of the land and an adjusted basis in the returned property of $84,600.88. Petitioners calculated the reported amounts as follows:

---

[2] The $105,719.85 used by petitioner as "cost" of the property consisted of petitioner's stipulated adjusted basis in the property of $70,329.55, the $35,017.60 sales commissions paid for petitioner at the time of sale, the $350.20 Georgia recording tax, and the $22.50 recording fee. This method of handling the sales commissions and selling costs was technically incorrect since these amounts should have been deducted from the sales price received rather than added to the cost or basis of the property. Obviously, the result as to the gain in 1974 is the same under the method used by petitioner in this case as it would be had the commissions and selling expenses been properly used to reduce the sales price of the property. However, attention is directed to the incorrect method because of statutory provisions discussed later in this opinion.

| Item | Amount |
|---|---|
| 1976 Repossession: | |
| 1974 sale real estate—downpayment in 1974 | $70,035.20 |
| Income reported | 48,891.23 |
| | 21,143.97 |
| Sales commissions and costs paid at | |
| the time of sale— 1974 $35,390.30 | |
| Repossession costs—1976 25.00 | |
| | 35,415.30 |
| | (14,271.33) |
| Loss on repossession: | |
| Adjusted property basis: | |
| Cost of land taxpayer's original basis | 70,329.55 |
| Add—repossession costs | 14,271.33 |
| Adjusted basis | 84,600.88 |

In his statutory notice of deficiency, respondent determined that petitioners had a long-term capital gain of $10,559.49 on repossession of the property. Respondent computed this gain as follows:

| Item | Amount |
|---|---|
| Amount of money received prior | |
| to the reacquisition | $70,035.20 |
| Less: gain on the sale of the property | |
| reported as income prior to reacquisition | 48,891.23 |
| Balance | 21,143.97 |
| Less: cost of reacquisition of property | 25.00 |
| Net gain from reacquisition | 21,118.97 |
| Less: sec. 1202 deduction | 10,559.48 |
| Increase in income | 10,559.49 |

Respondent also determined that petitioners were liable for a minimum tax pursuant to section 56(a) and section 57(a)(9) in the amount of $2,427.17.

The parties agree that the general rule of section 1038(a) provides that no gain or loss results to a seller upon the reacquisition of previously sold property except as provided in subsections (b) and (d).[3] Subsection (b) of section 1038 provides:

---

[3]Sec. 1038(a) provides:

SEC. 1038. CERTAIN REACQUISITIONS OF REAL PROPERTY.

(a) GENERAL RULE.—If

(b) AMOUNT OF GAIN RESULTING.—

(1) IN GENERAL.—In the case of a reacquisition of real property to which subsection (a) applies, gain shall result from such reacquisition to the extent that—

(A) the amount of money and the fair market value of other property (other than obligations of the purchaser) received, prior to such reacquisition, with respect to the sale of such property, exceeds

(B) the amount of the gain on the sale of such property returned as income for periods prior to such reacquisition.

(2) LIMITATION.—The amount of gain determined under paragraph (1) resulting from a reacquisition during any taxable year beginning after the date of the enactment of this section shall not exceed the amount by which the price at which the real property was sold exceeded its adjusted basis, reduced by the sum of—

(A) the amount of the gain on the sale of such property returned as income for periods prior to the reacquisition of such property, and

(B) the amount of money and the fair market value of other property (other than obligations of the purchaser received with respect to the sale of such property) paid or transferred by the seller in connection with the reacquisition of such property.

For purposes of this paragraph, the price at which real property is sold is the gross sales price reduced by the selling commissions, legal fees, and other expenses incident to the sale of such property which are properly taken into account in determining gain or loss on such sale.

(3) GAIN RECOGNIZED.—Except as provided in this section, the gain determined under this subsection resulting from a reacquisition to which subsection (a) applies shall be recognized, notwithstanding any other provision of this subtitle.

Both parties recognize that the gain computed under the limitation provisions of section 1038(b)(2) would exceed the gain as computed by respondent under section 1038(b)(1) and recognize that the applicable section for computing gain in this case is section 1038(b)(1).

Respondent takes the position that the language of section 1038(b)(1) is mandatory, unambiguous, and mechanical in its

---

(1) a sale of real property gives rise to indebtedness to the seller which is secured by the real property sold, and

(2) the seller of such property reacqires such property in partial or full satisfaction of such indebtedness,

then, except as provided in subsections (b) and (d), no gain or loss shall result to the seller from such reacqisition, and no debt shall become worthless or partially worthless as a result of such reacquisition.

Sec. 1038(d) is not applicable to the facts in this case.

application. He contends that the calculation formula of section 1038(b)(1) generates a reportable capital gain because it provides for the amount of money and fair market value of other property received prior to the reacquisition to be reduced only by the amount of gain previously reported and does not permit petitioners to reduce the money received by the sales commissions and costs paid at the time of the 1974 property sale. Respondent argues that petitioners will receive a tax benefit from the commissions and sales expenses paid in 1974 since the section 1038(c) basis calculation gives petitioners a stepped-up basis in their reacquired realty.[4]

On the other hand, petitioners argue that they are entitled to report a loss as a result of the reacquisition of the realty. Petitioners emphasize that in 1974 they reported taxable profit of and paid taxes on $48,891.23 while they received only $35,017.60 in "money." On brief, they suggest that "gain on the repossession of the property is limited to this sum of 'money'" collected. Petitioners contend that respondent's interpretation of the statute and regulations unwarrantedly creates taxable income at the time of repossession.

Petitioners' interpretation of the facts as to the "money" they received in 1974 is in error. When the purchasers of the property paid the real estate agent the $35,017.60 sales commission owed by petitioner, petitioner received this $35,017.60 as if the cash had been handed to him and he had handed it to the real estate agent. In fact, petitioners recognized that they received the $35,017.60 when they showed on their 1974 return as the total collected from the property in that year the amount of $70,035.20.

Congress enacted section 1038 in 1964[5] with several purposes in mind. Congress intended to provide a uniform method of

---

[4]Sec. 1038(c) provides:

(c) BASIS OF REACQUIRED REAL PROPERTY.—If subsection (a) applies to the reacquisition of any real property, the basis of such property upon such reacquisition shall be the adjusted basis of the indebtedness to the seller secured by such property (determined as of the date of reacquisition), increased by the sum of—

(1) the amount of the gain determined under subsection (b) resulting from such reacquisition, and

(2) the amount described in subsection (b)(2)(B).

If any indebtedness to the seller secured by such property is not discharged upon the reacquisition of such property, the basis of such indebtedness shall be zero.

[5]Pub. L. 88–570, 78 Stat. 854, 88th Cong., 2d Sess. (1964).

reporting gain upon the repossession of real property regardless of the method of accounting used by the taxpayer in reporting his gain or loss upon the initial sale.[6] Recognizing the possibility that the realty might have appreciated in value between the time of the initial sale and the repossession, Congress aimed to reduce the likelihood that the initial seller-taxpayer, who might be illiquid upon repossession, would be responsible at that time for reporting large amounts of gain and paying taxes thereon. Congress directed that at repossession, gain would not be measured by reference to the fair market value of the repossessed property.[7] Moreover, Congress intended that the gain which a taxpayer would be responsible for reporting upon repossession should not exceed the payments he actually had received prior to that time.[8]

While one of the purposes sought to be achieved by enacting section 1038 was to reduce the likelihood that a taxpayer would be responsible for reporting gain and paying taxes upon repossession of realty when in fact that taxpayer was not monetarily enhanced by the repossession, Congress clearly wrote the statute to require that where "a sale of real property gives rise to indebtedness to the seller which is secured by the real property sold, and * * * the seller of such property reacquires such property in partial or full satisfaction of such indebtedness," the seller must recognize gain as prescribed by section 1038(b). This language is mandatory and does not excuse any taxpayer from recognizing gain and paying taxes thereon even

---

[6]S. Rept. 1361, 88th Cong., 2d Sess. (1964), 1964–2 C.B. 828, 831. This report makes it clear that sec. 1038 not only limited the reportable gain "but also denies the recognition of any loss in the case of repossession of real property."

[7]S. Rept. 1361, 88th Cong., 2d Sess. (1964), 1964–2 C.B. 828, 831, states:

"Your committee believes that it is inappropriate to measure gain upon repossession by reference to the fair market value of the repossessed property. Your committee does not believe that merely because property originally held by a seller has been restored to him should constitute grounds for taxing any appreciation in value of this property to the seller at that time. Apart from any payments he may have received, he actually is in no better position than he was before he made the sale. As a result, your committee has concluded that instead of the repossession of the property being treated as a second sale of the property back to its original holder, it is desirable to consider instead that the first sale has been nullified."

[8]In limiting the reportable gain at the time of repossession to the amount of payments actually received prior to repossession, Congress stated that it "will not mean any decrease in ultimate taxpayments for the initial seller. Instead, it will only mean that any gain attributable to this property will be reported by him for tax purposes when he resells the property. To tax him on gain sooner than this in reality is taxing him on gain not yet realized. * * * [S. Rept. 1361, *supra*, 1964–2 C.B. at 831.]"

if upon repossession the taxpayer is not in a better monetary position than if he had not originally sold the property.

Section 1038(b) directs the taxpayer to calculate by two methods the gain resulting from repossession, and the taxpayer is responsible for reporting on his income tax return in the taxable year of the reacquisition the lesser of the two gain calculations. Although section 1038(b)(2), the limitation subsection, specifically allows the taxpayer to reduce the gross sales price by the selling commissions, legal fees, and other expenses incident to the initial sale, subsection (b)(1) does not permit such a reduction.

If the mandatory language of section 1038(b) works a hardship on a taxpayer, who prior to repossession has not received cash in an amount equal to the reportable gain required by section 1038(b), such taxpayer is not excepted from the operations of section 1038(b)(1). These taxpayers are awarded relief by obtaining an increased adjusted basis in the repossessed property pursuant to section 1038(c). Under section 1038(c), petitioner's adjusted basis in the repossessed property will offset any gain he is required to report on the repossession.

In the taxable year in issue, section 56(a) "imposed for each taxable year, with respect to the income of every person, a tax equal to 15 percent of the amount by which the sum of the items of tax preference exceeds the greater of—(1) $10,000, or (2) the regular tax deduction for the taxable year." Section 57(a)(9) defines capital gains as a tax preference item, and provided that "(A) Individuals.—In the case of a taxpayer other than a corporation, an amount equal to one-half of the net capital gain for the taxable year." Because we above concluded that petitioners were required by section 1038 to recognize long-term capital gain upon the 1976 reacquisition of the realty, petitioners are liable for payment of the minimum tax as imposed by sections 56(a) and 57(a)(9) on one-half of that gain.

*Decision will be entered for the respondent.*