**Alan V. ROSE and Christina Rose, Petitioners–Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 1176, Docket 88–4023.**

United States Court of Appeals, Second Circuit.

Argued May 16, 1988.

Decided Aug. 26, 1988.

Vicki G. Cheikes, New York City, for petitioners-appellants.

Kenneth W. Rosenberg, Atty., Tax Div., Dept. of Justice, Washington, D.C. (William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, Ann Belanger Durney, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel), for respondent-appellee.

Before MESKILL and WINTER, Circuit Judges, and McCURN, District Judge.[*]

PER CURIAM:

This appeal presents the question of whether a bad debt deduction should be disallowed under Section 1038(a) of the Internal Revenue Code, 26 U.S.C. § 1038(a) (1982), which disallows such a deduction where a taxpayer takes debt in exchange for real property and later reacquires the property in satisfaction of the debt. We conclude that the taxpayer in this case reacquired the property in satisfaction of the debt and affirm the judgment of the Tax Court.

### BACKGROUND

On September 15, 1970, Alan V. Rose sold a large tract of land to Benjamin Lehrer in exchange for a nonrecourse purchase money note secured by a mortgage in the amount of $294,000. Under the terms of the note, Lehrer was to make quarterly payments of interest until September 15, 1977, at which time the principal was due in full. On March 30, 1972, Rose assigned the note and mortgage to GIT Realty and Mortgage Investors ("GIT") as collateral for a loan of $282,818. Lehrer agreed to make all payments due under the note to GIT. Rose agreed to guarantee Lehrer's performance and to repurchase the note and mortgage from GIT at par plus accrued interest at the end of twenty-five months.

Lehrer defaulted, but GIT granted Rose several written extensions of his obligation to repurchase the note and mortgage. The last extension was entered into on September 12, 1977. GIT agreed to refrain from exercising certain rights against Rose and also to commence foreclosure proceedings under the mortgage. Accordingly, Rose's repurchase date was extended until January 10, 1979, and Rose agreed to continue his guaranty of the note and the mortgage. Rose also agreed that upon successful completion of the foreclosure proceeding, he

would pay to GIT the amount of any deficiency between the judgment obtained by GIT in the foreclosure proceeding and the sale price of the property plus up to $15,000 of GIT's legal fees in connection with the foreclosure action. If the foreclosure action was unsuccessful, or the note was not paid in full by January 10, 1979, Rose agreed to purchase the note for a sum equal to the then remaining principal balance of the note, all accrued unpaid interest, and GIT's legal expenses in prosecuting the foreclosure action. Finally, Rose agreed to pay GIT monthly interest of 8–½% per annum on the balance of the principal of the note.

As agreed, GIT brought an action to foreclose the mortgage, naming Rose as a defendant because of his guaranty. In July 1978, GIT purchased the property at the foreclosure sale for $100, making GIT the owner of record of the property. GIT credited the $100 it paid for the property to Rose's debt. GIT did not follow New York's statutory procedures for obtaining a deficiency judgment and instead demanded that Rose comply with the terms of the September 12, 1977 agreement. Rose refused. On January 11, 1979, GIT commenced an action against Rose to recover amounts due it under the agreement and to require Rose to take title to the property.

The New York Supreme Court granted summary judgment for Rose but the Appellate Division reversed and remanded for trial. After a bench trial, the Supreme Court found that the September 12, 1977 agreement was intended to allow Rose additional time to raise funds in order to regain title to the property in exchange for Rose's obligating himself to make GIT whole. The court ordered Rose to pay the amount owed to GIT, after which GIT was to convey the property to Rose.

The Appellate Division affirmed, after modifying the judgment to reduce by $2500 the legal fees allowed by the trial court. 94 A.D.2d 714, 462 N.Y.S.2d 245 (1983). The New York Court of Appeals affirmed

*Reed*, 726 F.2d 513 (9th Cir.1984). We need not address that issue.

[*] The Honorable Neal P. McCurn, United States District Judge for the Northern District of New York, sitting by designation.

for the reasons stated in the Appellate Division's opinion. 62 N.Y.2d 659, 464 N.E.2d 988, 476 N.Y.S.2d 290 (1984). Rose paid the judgment and reacquired title to the property in 1984.

Meanwhile, however, Rose and his wife, Christina, had deducted the entire principal amount of the original note ($294,000) as a bad debt loss under Section 166 of the Internal Revenue Code of 1954, 26 U.S.C. § 166 (as that section read in 1978) on their 1978 joint tax return. The Commissioner of Internal Revenue asserted a deficiency in the Roses' 1978 income taxes, based in part on the Commissioner's disallowance of the bad debt deduction. The Roses filed a petition in the Tax Court, and, on cross-motions for partial summary judgment, the Tax Court ruled in favor of the Commissioner.

## DISCUSSION

■ Section 1038 of the Internal Revenue Code provided at the pertinent time:

(a) If

(1) a sale of real property gives rise to indebtedness to the seller which is secured by the real property sold, and

(2) the seller of such property reacquires such property in partial or full satisfaction of such indebtedness,

then, ... no gain or loss shall result to the seller from such reacquisition, and no debt shall become worthless or partially worthless as a result of such reacquisition.

26 U.S.C. § 1038 (1982). The effect of this section is to deny bad debt deductions where a taxpayer takes debt in exchange for real property and later reacquires the property in satisfaction of the debt.

■ The Roses argue that he did not regain title to the property in satisfaction of the debt because GIT purchased the land at the foreclosure sale and thereby extinguished all his rights to it. However, the state courts found otherwise in holding that under the contract Rose's fulfillment of his monetary obligations to GIT entitled him to reacquire the land notwithstanding the fact that GIT had purchased it at the foreclosure sale. Had Rose complied with his obligations under the contract, therefore, he would have reacquired the land, and no bad debt deduction would have been available. Whether we agree with the New York Court of Appeals' interpretation of the September 12, 1977 agreement is irrelevant because it is binding upon us. *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed. 2d 886 (1967). The fact that Rose chose to litigate rather than meet his contractual obligations is therefore also of no consequence for purposes of Section 1038. That litigation may have deferred Rose's reacquisition of the property does not affect the conclusion that the reacquisition was in satisfaction of the debt.

The judgment of the Tax Court is affirmed.