T.C. Memo. 1997-444


UNITED STATES TAX COURT


SOOREN HOVHANNISSIAN AND ESTATE
OF MARY HOVHANNISSIAN, DECEASED, SOOREN
HOVHANNISSIAN, EXECUTOR, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6556-95.                    Filed September 29, 1997.


Stephen G. Utz and Ann McClure, for petitioners.

Elise F. Alair and Bradford A. Johnson, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


BEGHE, Judge:  Respondent determined the following deficiencies, addition to tax, and penalties:

| Year | Petitioner(s)[1] | Deficiency | Addition to tax Sec. 6651(a) | Penalty Sec. 6662 |
|------|------------------|------------|------------------------------|-------------------|
| 1989 | SH | $7,963 | $1,472 | $1,593 |
| 1989 | MH | 16,656 | --- | 3,331 |
| 1990 | SH & MH | 129,181 | --- | 25,836 |

[1] Petitioners are: (1) SH--Sooren Hovhannissian; (2) MH--Estate of Mary Hovhannissian, Deceased, Sooren Hovhannissian, Executor; and (3) SH & MH--Sooren Hovhannissian and Estate of Mary Hovhannissian, Deceased, Sooren Hovhannissian, Executor.

After concessions by both parties,[1] we first address whether petitioner Sooren Hovhannissian (petitioner) is required to include in his 1990 gross income, as gain under section 1038(b),[2] $383,288, the portion of the cash he received on an installment sale of real property in 1988 that he had not previously reported as gain. We hold that section 1038 governs petitioner's reacquisition in 1990 of the property upon the buyer's default on the installment note secured by the property; petitioner must include $383,288 as gain in his 1990 gross income. We also hold that petitioner is not entitled to claim a section 165 loss in 1990 on his reacquisition of the property. As a result,

_____

[1] Petitioner conceded the addition to tax, and respondent conceded the penalties. Petitioners argued on brief that they have conceded only $3,120 of their claim for car and truck expenses for taxable year 1990. However, the parties' stipulation clearly states that petitioners conceded $4,449 of those claimed deductions.

[2] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

petitioners are not entitled to any loss carrybacks from 1990 to 1989.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioners resided in Trumbull, Connecticut, when they filed their petition. Mrs. Hovhannissian thereafter died, and her estate was substituted as a party to this proceeding.

Beginning in 1953, petitioner acquired several contiguous parcels of land in Bridgeport, Connecticut (hereinafter 225-235 Boston Avenue property and 245 Boston Avenue property), upon which he built several structures. Petitioner operated a retail carpet and furniture business on the premises from the time of their construction until he sold the 225-235 Boston Avenue property in 1988. Petitioner continued to operate a carpet business at the 245 Boston Avenue property through at least 1990.

In 1972, petitioner began to build a combination parking garage and warehouse on the rear portion of the 225-235 Boston Avenue property. Petitioner encountered various difficulties in building this structure, which was never completed or put into service. Petitioner estimated that he spent $400,000 in constructing this structure, but lost his records of the construction costs. Petitioner submitted an expert report that

estimated the likely construction costs of the structure at $253,000 at the time of construction in the early 1970's. Thereafter, petitioner let the structure stand idle and unfinished, fenced off to prevent vandalism.  One of the walls of the structure collapsed prior to the 1988 sale and was never repaired.

On February 8, 1988, petitioner sold the 225-235 Boston Avenue property, which then consisted of the furniture store building (the front property) and the unfinished garage/warehouse structure (the rear property), to the Bridgeport Mini Limited Partnership (the partnership) for the stated consideration of $2,710,000.  Petitioner received $719,480 in cash and a nonrecourse purchase money mortgage note in the face amount of $2,030,400.[3]  Under the terms of the note, petitioner was to receive quarterly payments of interest for 3 years, at which time the principal amount of $2,030,400 and all accrued or unpaid interest would become due.  As part of the sale, petitioner obtained an engineering report showing that the garage structure was suitable for conversion into a self-storage facility.  He also obtained the permits necessary for conversion of both the front and rear properties into self-storage facilities.

---

[3] As part of the $719,480, petitioner received from the partnership approximately $39,880 above and beyond the sale price, which was properly reported by petitioner as part of the payments from the sale that were received during 1988.

For taxable year 1988, petitioner and Mrs. Hovhannissian filed a joint income tax return. Of the $719,480 in cash received upon the sale of the 225-235 Boston Avenue property, petitioners reported $336,192 as gain and $383,288 as a recovery of basis from an installment sale. Petitioners also received and reported $176,228 in interest payments from the partnership.

Petitioner and Mrs. Hovhannissian filed separate returns for taxable year 1989. They each reported $60,000 of the $120,000 of interest payments received from the partnership during that year. In 1990, petitioner and Mrs. Hovhannissian received no interest payments from the partnership.

Following the sale in 1988, the partnership began converting the 225-235 Boston Avenue property into a self-storage rental facility. In 1989, the partnership filed for bankruptcy, leaving the conversion incomplete and defaulting on its obligations to pay interest and principal on the mortgage note. The main building on the front property, which had formerly served as petitioner's furniture store, had been stripped to a bare shell to house the self-storage facility. The main building contained 449 mini storage bins installed on all three floors. The doors from all of the bins were missing. The partnership had also removed the roof of the unfinished garage structure and several important structural members.

On or about June 1, 1990, the Federal bankruptcy court supervising the partnership bankruptcy permitted petitioner to reacquire the 225-235 Boston Avenue property. The parties have stipulated that the fair market value of the 225-235 Boston Avenue property on the reacquisition date was $465,000. Pursuant to a claim petitioner made in November 1990, he received an insurance recovery of $4,000 in a later year for damage resulting from alterations made to the 225-235 Boston Avenue property by the partnership. Petitioner also filed suit against the attorney who represented him on the sale of the property, alleging that the partnership's purchase money mortgage note should have been recourse and not nonrecourse. Petitioner recovered no damages.

For taxable year 1990, petitioner and Mrs. Hovhannissian filed a joint income tax return, reporting a loss of $99,797. Upon the advice of their then income tax return preparer, they did not report any gain or loss on the reacquisition. Petitioner and Mrs. Hovhannissian filed separate Forms 1045, Application for Tentative Refund, claiming net operating loss carrybacks of $48,898 and $48,899, respectively, from 1990 to taxable year 1989.

In January to February 1995, respondent issued separate notices of deficiency to petitioner and Mrs. Hovhannissian for taxable year 1989 and a joint notice of deficiency for taxable year 1990. Petitioners filed a timely petition with this Court.

OPINION

1. <u>Application of Section 1038</u>

The primary issue for decision is whether section 1038 governs petitioner's reacquisition of the 225-235 Boston Avenue property, requiring petitioners to report $383,288 as hitherto unrecognized gain in taxable year 1990 under section 1038(b).

Congress added section 1038 to the Code to ensure that certain reacquisitions of real property sold in installment sales would not be treated as taxable exchanges by simple reference to the fair market value of the reacquired property.  Act of September 2, 1964, Pub. L. 88-570, 78 Stat. 854.  Section 1038(a) provides that a reacquisition of real property governed by section 1038 is one in which a sale of real property gave rise to indebtedness in favor of the seller, the indebtedness was secured by the real property sold, and the seller reacquired the real property in full or partial satisfaction of the indebtedness; except as provided in section 1038(b), no gain or loss results from the reacquisition and no debt can be treated as having become worthless or partially worthless for any such reacquisition.[4]

---

[4] Sec. 1038(a) provides:

If--
    (1) a sale of real property gives rise to indebtedness to the seller which is secured by the real property sold, and

(continued...)

For reacquisitions governed by section 1038(a), section 1038(b)(1) requires the seller to recognize gain to the extent that money and the fair market value of other property received from the sale prior to reacquisition exceed the amount of gain recognized in previous periods.[5] Section 1038(b)(2) limits the amount of gain to be recognized to the amount by which the original sale price exceeded the sum of: (1) The adjusted basis of the property, (2) gain previously recognized on the sale, and

---

[4](...continued)
  (2) the seller of such property reacquires such property in partial or full satisfaction of such indebtedness,

then except as provided in subsections (b) and (d), no gain or loss shall result to the seller from such reacquisition, and no debt shall become worthless or partially worthless as a result of such reacquisition.

[5] Sec. 1038(b)(1) provides:

In the case of a reacquisition of real property to which subsection (a) applies, gain shall result from such reacquisition to the extent that--

  (A) the amount of money and the fair market value of other property (other than obligations of the purchaser) received, prior to such reacquisition, with respect to the sale of such property, exceeds

  (B) the amount of the gain on the sale of such property returned as income for periods prior to such reacquisition.

(3) any money paid or other property (measured by its fair market value) transferred in connection with the reacquisition.[6]

Section 1038 governs the Federal income tax treatment of all reacquisitions described therein, even where "the mandatory language of section 1038(b) works a hardship on a taxpayer". Greene v. Commissioner, 76 T.C. 1018, 1026 (1981) (relief available to such taxpayers through increases to basis under section 1038(c) that offset gain reported upon reacquisition); sec. 1.1038-1(a), Income Tax Regs. Section 1038 applies to such reacquisitions even when substantial improvements have been made

---

[6] Sec. 1038(b)(2) provides:

Limitation.--The amount of gain determined under paragraph (1) resulting from a reacquisition during any taxable year beginning after the date of the enactment of this section shall not exceed the amount by which the price at which the real property was sold exceeded its adjusted basis, reduced by the sum of--

    (A) the amount of the gain on the sale of such property returned as income for periods prior to the reacquisition of such property, and

    (B) the amount of money and the fair market value of other property (other than obligations of the purchaser received with respect to the sale of such property) paid or transferred by the seller in connection with the reacquisition of such property.

For purposes of this paragraph, the price at which real property is sold is the gross sales price reduced by the selling commissions, legal fees, and other expenses incident to the sale of such property which are properly taken into account in determining gain or loss on such sale.

that substantially change the property.  Conners v. Commissioner, 88 T.C. 541 (1987).

In Conners v. Commissioner, supra, we held that section 1038 does not require a taxpayer who reacquires land improved by the buyer to recognize gain on the reacquisition with respect to the improvements.  In Conners, the taxpayers sold land for $10,000 cash and a $720,000 promissory note to a developer who constructed a 48-unit town house project.  The developer/buyer defaulted on his note to the taxpayers when he could not sell all the units.  The taxpayers ultimately agreed to take title to six units, the land underlying those units, and six forty-eighths of the common land in lieu of exercising their right to foreclose. The taxpayers did not report any gain upon the reacquisition. Id. at 542-543.

In Conners, the Commissioner argued that the taxpayers were required to recognize gain from the improvements because the property was "substantially different from that which they sold", id. at 544, contending that section 1038 did not apply because, contrary to congressional intent, the taxpayers "were in a better position following the reacquisition", id. at 545.  However, we found that the taxpayers were not in a better position, and that to tax them on the improvements at that point would be to "require the recognition of gain not yet realized, out of funds not yet received."  Id.  We held that "repossession of improved

property in satisfaction of an obligation resulting from the sale of the same property prior to improvements is entitled to nonrecognition treatment under section 1038." Id. at 546.

To aid in determining the applicability of section 1038 to the facts in Conners, we used four factors enumerated in the legislative history, indicating

> that Congress felt it was inappropriate to measure gain upon repossession of the property by reference to the fair market value at the time of the repossession because (1) the taxpayer was actually in no better position than he was before he made the sale; (2) valuation at the time of repossession was difficult; (3) to tax the initial seller on gain at the time of repossession was to tax him on gain not yet realized; and (4) because the taxpayer had not received a monetary return with respect to the property, funds to pay the taxes may be unavailable. [Id. at 544-545 (citing S. Rept. 1361, 88th Cong., 2d Sess. (1964), 1964-2 C.B. 828, 831).]

Petitioners argue that the 225-235 Boston Avenue property was so changed by reason of the partnership's failure to complete the conversion to the self-storage facility that section 1038 should not apply to the entire property, but only to the front property, the former furniture store and the land on which it stands. Petitioners argue that section 1038 should not apply to the rear property because the buyer so irreparably damaged the parking structure that petitioners "cannot be taxed as though the building still existed and could therefore be said to have been recovered as well." Petitioners argue alternatively that, even if section 1038 does apply to the entire property, petitioner is

entitled to a section 165 loss upon the reacquisition of the rear property in its damaged condition. Respondent, citing <u>Conners v. Commissioner</u>, <u>supra</u>, argues that section 1038 applies to real property that has been reacquired, even if it has been substantially changed.

Before considering the four factors described in the legislative history and quoted in <u>Conners v. Commissioner</u>, <u>supra</u> at 544, we address petitioner's argument that the property should be bifurcated so as to apply section 1038 only to the front property. Petitioner sold the 225-235 Boston Avenue property as a single piece of property and reacquired it as a single piece of property. The warranty deed by which petitioner conveyed the property to the partnership in 1988 also identifies the property as a single parcel. Cf. <u>Goudas v. Commissioner</u>, T.C. Memo. 1996-555. There is nothing in the facts of this case to support a finding that the 225-235 Boston Avenue property is divisible in any meaningful way that would be supported by language of the statute, the regulations, or the legislative history. On this ground alone, we could hold that section 1038 applies to the reacquisition of the entire 225-235 Boston Avenue property because petitioners have conceded the applicability of section 1038 to the front property. However, we go on to consider the four factors referred to in the legislative history.

We cannot determine from the record whether petitioner was in a better or worse position at the time of reacquisition than he was at the time of the original sale. Upon the reacquisition, petitioner had the property, plus $719,480 in cash he had received at the time of sale, and $296,228 in interest payments. The parties have stipulated that the fair market value of the 225-235 Boston Avenue property was $465,000 at the time of reacquisition. Under the terms of the mortgage note, petitioner had no further recourse against the partnership or its general partners upon reacquisition of the property. Despite his subsequent expressions of discontent with the terms of the transaction, petitioner willingly sold the property on those terms in 1988 and received $719,480 at the closing and interest payments pursuant to the mortgage note in 1988 and 1989. Only when petitioner resells the property will he be able to ascertain whether the changes by the partnership and the then-current market conditions will result in a loss. Congress enacted section 1038 to provide mandatory, uniform income tax treatment in precisely this kind of case, deferring recognition of either gain or loss until the seller once again sells the reacquired property and the amount of the gain or loss can be objectively measured. S. Rept. 1361, supra, 1964-2 C.B. at 831; see also Greene v. Commissioner, 76 T.C. at 1025-1026.

The difficulty in determining a fair market value by which to ascertain an amount realized in the absence of a realization event was another major reason why Congress enacted section 1038. S. Rept. 1361, supra, 1964-2 C.B. at 831. That valuation difficulty is present in this case: Although the parties have stipulated, based on petitioner's expert's opinion, a fair market value of $465,000 at reacquisition, the record also contains a 1989 appraisal of the same property in the same condition for $2,300,000.

We discuss the third and fourth factors in light of petitioner's further argument that applying section 1038 to this case would be unconstitutional because petitioner did not realize any gain in connection with the sale and subsequent reacquisition of the 225-235 Boston Avenue property and should therefore not be taxed on any gain nor denied a claim for a loss at the time of reacquisition. To support his argument, petitioner also claims that the fair market value of the property at the time of reacquisition governs whether any gain was realized on the transactions at issue.[7]

---

[7] Petitioner argues that he should not be taxed if the value of the property he received back and the amount of cash and other property he received in connection with the initial sale are less than his presale basis in the property. The amount that petitioner received ($719,480) plus the fair market value of the property at acquisition ($465,000) is slightly less ($1,184,480) than the adjusted presale basis in the property ($1,187,465) claimed on his 1988 income tax return for the year of the sale.

(continued...)

Petitioner's arguments misconstrue both the intent and operation of section 1038.  As discussed supra, Congress enacted section 1038 to obviate the difficulties, in the absence of an identifiable sale or other exchange at the time of reacquisition, of ascertaining the fair market value of the property and objectively determining whether gain or loss was actually realized.  See S. Rept. 1361, supra, 1964-2 C.B. at 831.

To that end, section 1038(a) expressly disallows any recognition of gain or loss in connection with the reacquisition itself.  Section 1038(b) requires only that the seller recognize and report as gain that amount of any cash or other property that was received by the seller on the original sale and whose recognition was deferred under section 453.  Such recognition rectifies the imbalance created by the section 453 deferral, which Congress allowed in order to sidestep "the seemingly elementary issue of when the 'amount realized' by the seller includes the value of the buyer's obligations to make the future payments".  Bittker & McMahon, Federal Income Taxation of

---

[7](...continued)
For at least two reasons, this argument cannot prevail. First, the relevant realization event for measuring gain is the initial sale, not the subsequent reacquisition.  Second, both the legislative history and the regulations specifically state that the fair market value of the property at the time of reacquisition is immaterial.  See S. Rept. 1361, 88th Cong., 2d Sess. (1964), 1964-2 C.B. 828, 831; sec. 1.1038-1(a), Income Tax Regs.  Moreover, we are not satisfied that petitioner has proved the presale basis claimed on the 1988 return.

Individuals, sec. 29.12, at 29-34 (2d ed. 1995 & Supp. 1997). As section 1.1038-1(a)(1), Income Tax Regs., explains:

> It is immaterial, for purposes of applying * * * [section 1038], whether the seller realized a gain or sustained a loss on the sale of the real property, or whether it can be ascertained at the time of the sale whether gain or loss occurs as a result of the sale. It is also immaterial what method of accounting the seller used in reporting gain or loss from the sale of the real property or whether at the time of reacquisition such property has depreciated or appreciated in value since the time of the original sale. * * *

Petitioner also argues that the $719,480 he received in connection with the original sale was not income, but only a "receipt". We may dismiss this argument by noting that it has been long settled that all amounts received in connection with a realization event, which in this case was the original sale, must be included in income under sections 1001 and 61(a). Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Petitioner had "complete dominion" over the cash in that he had no expectation that he would ever have to return it to the buyer, Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203, 210 (1990); Herbel v. Commissioner, 106 T.C. 392, 413 (1996).[8]

_____

[8] We note in passing that we could alternatively view the 1988 sale not as a sale of the property as such, but as the sale to the partnership for $719,480 of an option to purchase the property for the face amount of the note, $2,030,400, especially if the nonrecourse note were seen as invalid under the analysis in Estate of Franklin v. Commissioner, 64 T.C. 752, 762-763 (1975), affd. on other grounds 544 F.2d 1045 (9th Cir. 1976), because the face amount of the note so greatly exceeded the fair

(continued...)

The operation of section 1038(b) and (c) illustrates why it is appropriate that petitioner should be liable for income tax on hitherto untaxed amounts received prior to the reacquisition.  In 1988, petitioner recognized $336,192 of the $719,480 received as part of the consideration for the sale of the 225-235 Boston Avenue property and deferred the balance under section 453(c). Section 1038(b)(1) requires the recognition of that balance, $383,288, up to the limit imposed by section 1038(b)(2) of the original sale price less petitioner's claimed presale basis, or $1,186,343.[9]  Section 1038(b) ensures that all receipts of cash and other property by the seller prior to reacquisition are taxed as income to return the seller to as close to status quo ante

---

[8](...continued)
market value of the property.  If the 1988 sale were analyzed as the sale of an option to buy the 225-235 Boston Avenue property, the overall Federal tax consequences would be similar to the operation of sec. 1038, although the timing of recognition and adjustment to basis would differ.  Only when an option lapses does the grantor of an option include in gross income the amount received for the option, id. at 763, Koch v. Commissioner, 67 T.C. 71, 82 (1976); see also Rev. Rul. 78-182, 1978-1 C.B. 265, 267; Rev. Rul. 58-234, 1958-1 C.B. 279, 283, as short-term capital gain, sec. 1234(b)(1).  The option grantor retains his property with its basis unchanged.  The more favorable treatment of a seller who reacquires real property under sec. 1038 in terms of allowed adjustments to basis belies petitioner's argument that sec. 1038 is unconstitutional in its application to the facts of his case.  See also Greene v. Commissioner, 76 T.C. 1018 (1981).

[9] Sec. 1038(b)(2) limits the amount required to be recognized under sec. 1038(b)(1) to the amount by which the sale price exceeds the sum of: (1) presale basis; (2) amounts previously recognized; and, (3) amounts paid in connection with the reacquisition (in this case, nothing) ($2,710,000 - (1,187,465 + 336,192 + 0) = 1,186,343).

with respect to the reacquired property as circumstances will permit. Section 1038(c)[10] recalculates petitioner's basis in the reacquired property to account for the original, presale basis that the seller had in the property, plus other adjustments such as sales costs, as reflected in the seller's basis in the debt instrument under section 453, see sec. 1.453-9(b)(2), Income Tax Regs., plus the gain reported under section 1038(b), sec. 1038(c)(1), gain reported in prior taxable years, sec. 1038(c)(2), and any amounts paid in connection with the reacquisition, sec. 1.1038-1(g)(1)(iii), Income Tax Regs. The operation of these two subsections leaves the seller having paid all Federal taxes due on cash and other property received prior to reacquisition, and in possession of his original property with an increased basis.

In light of the foregoing, we hold that section 1038 governs petitioner's reacquisition of the real property at 225-235 Boston Avenue in satisfaction of the indebtedness arising from its sale, sec. 1.1038-1(a), Income Tax Regs. Section 1038 governs the entire reacquisition even though the property has been substantially changed through incomplete modifications to both the erstwhile furniture store and the structure on the rear

---

[10] There is conflicting evidence in the record with respect to petitioner's basis in the parking structure at the time of the 1988 sale, which will have a direct bearing on the calculation of petitioner's post-reacquisition basis in the property under sec. 1038(c).

property.  See Conners v. Commissioner, supra at 546-547

(reacquisition of real property governed by sec. 1038 even though

substantial improvements made).  Under section 1038(b)(1),

petitioner must recognize and include in gross income the

previously excluded balance of the initial cash payment,

$383,288.

2.   Disallowance of Loss Related to Reacquisition Governed
     by Section 1038

Petitioner argues in the alternative that, as a matter of

law, he is entitled, under section 165, to claim a loss on the

reacquisition.  Section 1038(a) forestalls a seller, incident to

a section 1038 reacquisition of real property, from claiming a

bad debt deduction under section 166 for the default in payment

of the purchase money mortgage debt secured by that property.

Rose v. Commissioner, T.C. Memo. 1987-19, affd. 855 F.2d 65 (2d

Cir. 1988).  The language of section 1038(a), which states that

"no gain or loss shall result to the seller from such

reacquisition", see also sec. 1.1038-1(a)(1), Income Tax Regs.,

also disallows other kinds of losses, including those that might

be claimed under section 165.  Disallowing any loss claimed under

section 165 is consistent with the broader congressional intent

in enacting section 1038:

     Your committee also believes that it is desirable to
     have a uniform rule applicable in case of repossession
     of real property, whether the initial sale was at a
     gain or loss * * * it is desirable to have the same
     rule applicable whether the value of the property after

the initial sale has gone up or down. * * * [S. Rept.
1361, supra, 1964-2 C.B. at 831].

Applying the plain meaning of the language of the statute, United
States v. Ron Pair Enters., 489 U.S. 235, 242 (1989); National
Life Ins. Co. & Subs. v. Commissioner, 103 F.3d 5, 8 (2d Cir.
1996), affg. 103 T.C. 615 (1994); Belloff v. Commissioner, 996
F.2d 607, 616 (2d Cir. 1993), affg. T.C. Memo. 1991-350, the
legislative history, see S. Rept. 1361, supra, 1964-2 C.B. at
831, and the associated regulations, see sec. 1.1038-1(a), Income
Tax Regs., we hold that petitioner, as a matter of law, is not
entitled to recognize any loss on the reacquisition of the 225-
235 Boston Avenue property.

Even if section 1038 did not forestall a claim to a
concurrent loss under section 165--a claim we reject--petitioner
has not shown that he has satisfied the conditions for allowance
of a loss under section 165.[11]  We cannot easily identify from
the record what--if any--loss petitioner incurred as a result of
the closed and completed transaction, CRST, Inc. v. Commissioner,
92 T.C. 1249, 1260 (1989), affd. 909 F.2d 1146 (8th Cir. 1990),
attributable to the 1988 sale and 1990 reacquisition that
resulted in petitioner's receipt and retention of more than $1
million in cash, plus the reacquisition of his property.  We

---

[11] Sec. 165(c), which limits the types of losses that
individuals may claim, does not appear to forestall petitioner
from claiming a loss because he is claiming it incident to a
transaction entered into for profit.  Sec. 165(c)(2).

cannot identify the specific amount that petitioner spent in constructing the structure.  Although petitioner claims $400,000, the record, including the report submitted by petitioner's expert, indicates that petitioner spent, or should have spent, no more than $253,000.  After having spent this money constructing the structure, petitioner let the structure stand unused for nearly 15 years, doing nothing with it except closing it off to prevent vandalism.  Petitioner then received $719,480 in cash (and substantial interest payments thereafter) and a note for $2,030,400 for the sale of the entire 225-235 Boston Avenue property, at a time when the record, including petitioner's own testimony that one of the walls collapsed prior to the 1988 sale, strongly supports the inference that the garage structure was virtually worthless prior to the sale.[12]  These difficulties in identifying the amount and time of petitioner's loss suffice to preclude petitioner's claim of a casualty loss under section 165(c)(3) and (h).  There are other hurdles to allowance of a casualty loss that petitioner has not surmounted.  A casualty

---

[12] Even if petitioner were entitled to a casualty loss, he would be restricted to the lesser of adjusted basis or value prior to the casualty--the garage was not part of a trade or business because it had never been placed in service.  Helvering v. Owens, 305 U.S. 468 (1939); sec. 1.165-7(b)(1)(ii), Income Tax Regs.  The evidence in the record that the garage structure was virtually worthless when the 225-235 Boston Avenue property was sold, which is even less than the $253,500 cost of construction figure imputed by petitioner's expert, would leave petitioner short of his goal of proving entitlement to a casualty loss.

loss must be "sudden", "unexpected", or "unusual".  Maher v. Commissioner, 680 F.2d 91, 92 (11th Cir. 1982), affg. 76 T.C. 593 (1981); Matheson v. Commissioner, 54 F.2d 537, 539 (2d Cir. 1931), affg. 18 B.T.A. 674 (1930).  As noted supra, the garage was probably already worthless prior to the 1988 sale before the occurrence of any of the events that--petitioner claims--destroyed the value of the garage.  The dismantling of the garage by the partnership was neither sudden nor unexpected.  Both petitioner and the partnership contemplated that the partnership would convert the structure into a self-storage facility, as evidenced by the permits and engineering reports that petitioner obtained prior to the closing of the sale.

Finally, we note that the circumstances in cases allowing casualty losses under section 165(c)(3) have been very different from the facts of this case.  This Court and other courts have disallowed casualty losses where human hands intervene in circumstances not constituting "fire, storm, shipwreck, or * * * theft", sec. 165(c)(3); see e.g., Maher v. Commissioner, 680 F.2d at 93-94 (citing numerous cases allowing and disallowing casualty losses); Powers v. Commissioner, 36 T.C. 1191, 1192 (1961) (confiscation of automobile by "officials in East Germany acting under color of legal authority, arbitrary and despotic as it may

have been, could not have been a 'theft' for tax deduction purposes").[13]

Neither section 1038 nor section 165 allows petitioners' claim to a loss upon petitioner's reacquisition of the 225-235 Boston Avenue property in 1990.

To reflect the foregoing and the parties' concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[13] Sec. 280B expressly restricts the deduction of losses resulting from demolition of buildings.